UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE

NORTHLAKE FOODS, INC.,

                    Debtor.
_____/

DAVID H. CRUMPTON,

                    Appellant,

v.                                        Case No.  8:11-cv-2648-T-33
                                      Bankr. No. 8:08-bk-14131-CED
                                   Advs. Pro. No. 8:10-ap-00930-CED

RICHARD STEPHENS,
                    Appellee.
_____/

## ORDER

This matter comes before the Court pursuant to the appeal of David H. Crumpton, in his capacity as Distribution Trustee for the Distribution Trust of Northlake Foods, Inc., of the Bankruptcy Court's February 9, 2011, Order granting Appellee's Motion for Judgment on the Pleadings (Doc. # 1-15), and the Bankruptcy Court's September 9, 2011, Order granting Appellee's Motion to Dismiss Amended Complaint (Doc. # 1-2).

This Court has considered the briefs of the parties (Doc. ## 7, 13, 15) and the record below, and for the reasons that follow, affirms the Bankruptcy Court's Orders.

## I.    Background and Procedural History

The Debtor Northlake Foods, Inc. is a "Subchapter S" Georgia corporation that owned approximately 150 Waffle House restaurants

in Georgia, Florida, and Virginia. (Doc. # 1-6 at ¶¶ 11, 14).  At all relevant times, Appellee Richard Stephens was a shareholder of the Debtor.  (Id. at ¶ 12).

On or about March 1, 1991, the Debtor's shareholders executed a Shareholders Agreement, which, in relevant part, provides:

> If the Corporation's income ever becomes taxable to the Shareholders rather than to the Corporation, the Corporation shall pay a dividend at least annually in an amount and at a time sufficient for each Shareholder to pay out of the dividend all income tax, state and federal, attributable to that portion of the Corporation's income included in such Shareholder's income in the year preceding the year of payment of the dividend.

(Id. at ¶ 13); (Doc. # 1-17 at 6).

The Debtor's 2005 federal income tax return reflected positive taxable income for that year. (Doc. # 1-6 at ¶ 14).  Pursuant to the Shareholders Agreement, in 2006, the Debtor's directors unanimously adopted a resolution authorizing the payment of a dividend to Appellee in the amount of $94,429.00, representing Appellee's income taxes attributable to Appellee's share of the Debtor's taxable income for the year 2005. (Id. at ¶ 15); (Doc. # 1-18).  During 2006, the Debtor made cash payments to Appellee totaling $94,429.00 (the "2006 Transfer") pursuant to the Shareholders Agreement and the Director's Resolution. (Doc. # 1-6 at ¶ 16).

On September 15, 2008, Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code. (Id. at ¶

1).  On January 28, 2009, in accordance with the Bankruptcy Court's order confirming the Debtor's Chapter 11 plan, the Bankruptcy Court approved the appointment of Appellant as Distribution Trustee for Debtor's Distribution Trust.  (Id. at ¶ 2).

Appellant initiated this adversary proceeding against Appellee on September 16, 2010, seeking avoidance and recovery of the 2006 Transfer, which Appellant alleges constitutes a fraudulent transfer under the United States Bankruptcy Code, 11 U.S.C. § 544(b)(1) and the Georgia Uniform Fraudulent Transfers Act, O.C.G.A. §§ 18-2-70 et seq.  Appellee filed a motion for judgment on the pleadings on December 9, 2010 (Doc. # 1-10), and the Bankruptcy Court held a hearing on the motion on February 4, 2011 (Doc. # 1-14).  On February 15, 2011, the Bankruptcy Court entered an order granting the motion and dismissing Appellant's complaint without prejudice. (Doc. # 1-15). The Bankruptcy Court granted Appellant leave to file an amended complaint to allege a claim for recovery of an illegal dividend. (Id.).

On March 2, 2011, Appellant filed his amended complaint, alleging a cause of action for recovery of an illegal dividend pursuant to O.C.G.A. § 14-2-640. (Doc. # 1-16). Appellee filed a motion to dismiss the amended complaint on March 14, 2011. (Doc. # 1-20).  The Bankruptcy Court entered an order on September 9, 2011, granting the motion to dismiss and dismissing the amended complaint. (Doc. # 1-2). On September 23, 2011, Appellant timely

filed this appeal of the Bankruptcy Court's February 15, 2011,
Order and September 9, 2011, Order. (Doc. # 1).

## II.   <u>Standard of Review</u>

The United States District Court functions as an appellate
court in reviewing decisions of the United States Bankruptcy Court.
<u>In re Colortex Indus., Inc.</u>, 19 F.3d 1371, 1374 (11th Cir. 1994).
Upon entry of a final order by the bankruptcy court, a party may
appeal to the district court pursuant to 28 U.S.C. § 158(a).

The standard of review employed by this Court in reviewing the
bankruptcy court's findings of fact is the clearly erroneous
standard of review described in Federal Rule of Bankruptcy
Procedure 8013.   A finding of fact is clearly erroneous when,
"although there is evidence to support it, the reviewing court on
the entire record is left with the definite and firm conviction
that a mistake has been committed." <u>Crawford v. W. Elec. Co., Inc.</u>,
745 F.2d 1373, 1378 (11th Cir. 1984)(citing <u>United States v. United
States Gypsum Co.</u>, 333 U.S. 364 (1948)).

This Court reviews de novo the legal conclusions of the
bankruptcy court. <u>In re JLJ, Inc.</u>, 988 F.2d 1112, 1116 (11th Cir.
1993).   A motion for judgment on the pleadings is governed by the
same standard as a Rule 12(b)(6) motion to dismiss. <u>Evanston Ins.
Co. v. Premium Assignment Corp.</u>, No. 8:11-cv-2630, 2012 WL 2585211,
at *3 (M.D. Fla. July 3, 2012)(citing <u>Hawthorne v. Mac Adjustment,
Inc.</u>, 140 F.3d 1367, 1370 (11th Cir. 1998)).   Accordingly, in

reviewing a motion to dismiss under Rule 12(b)(6), as made applicable to bankruptcy proceedings by Rule 7012(b), Fed. R. Bankr. P., this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the Appellant. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the Appellant with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). However, the Supreme Court has explained that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). In addition, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Furthermore, "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

Appellant argues in its reply brief that dismissal of a claim under Rule 12(b)(6) is appropriate only where "no construction of

the factual allegations of a complaint will support that claim."
(Doc. # 15 at 4)(quoting <u>Marshall Cnty. Bd. of Educ. v. Marshall
Cnty. Gas Dist.</u>, 992 F.2d 1171, 1174 (11th Cir. 1993)).[1]  However,
this standard has been expressly retired and supplanted by the
Supreme Court's directive in <u>Twombly</u>. <u>Am. Dental Ass'n v. Cigna
Corp.</u>, 605 F.3d 1283, 1288 (11th Cir. 2010) ("In <u>Twombly</u>, the
Supreme Court expressly 'retired' the 'no set of facts' pleading
standard under Rule 8(a)(2) that the Court had previously
established in <u>Conley v. Gibson</u>.").  Thus, the Court will apply the
standard articulated by the Supreme Court in <u>Twombly</u> and <u>Iqbal</u>,
under which "the complaint cannot suggest the existence of a claim;
the complaint must contain enough facts to state a claim to relief
that is plausible on its face."   <u>Mukamal v. Bakes</u>, 378 F. App'x
890, 896 (11th Cir. 2011)(quoting <u>Twombly</u>, 550 U.S. at 570).

Furthermore, the Court notes that the motions were not
converted into motions for summary judgment because the Bankruptcy
Court did not consider matters outside the pleadings.[2] "Rule 7(a)

---

[1]    Appellant also states that Appellee acknowledges this
standard in his brief and cites to Appellee's brief for this
contention. (Doc. # 15 at 7).  However, nowhere does Appellee's
brief acknowledge this standard or quote the language that
Appellant attributes to him.  Thus, Appellant's citation to
Appellee's brief on this point appears to be in error.

[2]    When a document outside the pleadings is considered, Rule
12(c), Fed.R.Civ.P., requires that "the motion be treated as a
motion for summary judgment and disposed of as provided in Rule 56,
and all parties shall be given reasonable opportunity to present
all materials made pertinent by such a motion."

defines 'pleadings' to include both the complaint and the answer, and Rule 10(c) provides that '[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.'" <u>Horsley v. Feldt</u>, 304 F.3d 1125, 1134 (11th Cir. 2002) (quoting Fed. R. Civ. P. 7(a) and 10(c)). Thus, the Bankruptcy Court properly considered the various exhibits attached to the complaint without converting the motions to dismiss into motions for summary judgment.

## III. <u>Analysis</u>

### A.   <u>February 9, 2011 Order</u>

The first issue presented in this appeal is whether the Bankruptcy Court erred in ruling that the Debtor's pre-petition transfer pursuant to a Shareholders Agreement of $94,429.00 to Appellee, a former shareholder of the Debtor, is not an avoidable fraudulent transfer under the Bankruptcy Code, 11 U.S.C. §§ 544, 548, 550, and the Georgia Uniform Fraudulent Transfers Act, O.C.G.A. § 18-2-70 <u>et</u> <u>seq</u>.

Pursuant to 11 U.S.C. § 548, a trustee may avoid any transfer that was made by the Debtor within two years before the filing of the bankruptcy petition, if the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation and was insolvent on the date that such transfer was made . . . or became insolvent as a result of such transfer."  11

U.S.C. § 548(a)(1)(B)(i)-(ii).   Georgia's UFTA contains similar requirements.

The parties do not dispute on appeal whether the transfer was made within two years of the petition filing nor whether the Debtor was insolvent on the date of the transfer or became insolvent as a result of the transfer.  Rather, Appellant appeals the Bankruptcy Court's ruling on February 9, 2011, granting Appellee's Motion for Judgment on the Pleadings based on the court's finding that "the Complaint reflects that the Debtor received reasonably equivalent value for the 2006 Transfer." (Doc. # 1-15 at 3).  Specifically, the Bankruptcy Court found that the Debtor received reasonably equivalent value because both 11 U.S.C. § 548(d)(2)(A) and O.C.G.A. § 18-2-73(a) define "value" to include satisfaction of an antecedent debt and "the 2006 Transfer satisfied an antecedent debt owed to [Appellee] pursuant to the Shareholders Agreement." (Id.). The Bankruptcy Court further ruled that the Debtor received reasonably equivalent value for the 2006 Transfer "by virtue of the Debtor's Subchapter S election for federal income tax purposes," explaining that:

> [t]he 2006 Transfer was made to [Appellee] pursuant to the Shareholders Agreement to pay the [Appellee's] proportionate share of income tax liability incurred by [Appellee] as a result of the Debtor's operations. Without the Sub-S corporation designation for federal income tax purposes, the Debtor would have paid the income tax directly.

Id.

Appellant contends that the Bankruptcy Court erred in finding that the Debtor received reasonably equivalent value for the 2006 Transfer as a result of the Debtor's election as a Subchapter S Corporation. However, the Court agrees with the Bankruptcy Court's finding and affirms the dismissal of the complaint on this basis.

Under Federal tax law, corporations generally pay tax on their income and, upon distributing dividends to shareholders, the shareholders then pay tax on the income that is distributed to them. Ad-Vantage Tel. Dir. Consultants, Inc. v. GTE Dir. Corp., 849 F.2d 1336, 1354 (11th Cir. 1987). However, certain small corporations may elect "Subchapter S" status, which allows the corporation to pay no income tax. Id. Instead, each shareholder reports a pro rata share of the corporation's income on his or her personal tax return, thus, avoiding the "double tax" imposed on other corporations. Id. Here, the Debtor elected such Subchapter S status, and as such, did not pay taxes itself but passed the tax liability through to its shareholders. However, pursuant to the Shareholders Agreement, the Debtor was obligated to reimburse the shareholders for the additional income taxes attributable to the pass-through liability from the corporation. (Doc. # 1-17 at 6). The complaint alleges and the Debtor's Director's Resolution confirms that the 2006 Transfer represented only that portion of income tax attributable to Appellee's share of the Debtor's taxable income.

Appellant contends that the Debtor did not receive a reasonably equivalent value, or any value at all, as a result of the Subchapter S status and maintains that only the Debtor's shareholders were benefitted by the election. Appellant urges the Court to evaluate the issue of value from the perspective of the Debtor's creditors and argues that the creditors were not benefitted as a result of the 2006 Transfer. The Court does not find this argument convincing.

Initially, the Court disagrees with Appellant that the Debtor or the Debtor's creditors must necessarily "benefit" from a transaction in order for it to not be a fraudulent transfer. Rather, as long as "the debtor's unsecured creditors are *not worse off* because the debtor . . . has received something reasonably equivalent to what the debtor has transferred, then no fraudulent transfer or conveyance has occurred." In re Stewart Fin. Co., No. 05-3085, 2007 WL 1704423, at *4 (Bankr. M.D. Ga. June 8, 2007)(emphasis added). Because the Debtor would have had to pay income taxes itself had it not elected Subchapter S status, the Court cannot say that either it or its creditors were made worse off by the Debtor's reimbursement to its shareholders for their portion of the income taxes paid. Accordingly, the Court finds that the Debtor received reasonably equivalent value for the 2006 Transfer in the form of Appellee's payment of the income taxes

attributable to the Debtor's income and for which the Debtor would have been liable in absence of the Subchapter S election.

The Court finds support for its holding in In re Kenrob Information Technology Solutions, Inc., 474 B.R. 799 (E.D. Va. 2012), in which the Bankruptcy Court for the Eastern District of Virginia considered this very issue under analogous facts and reached the same result. As in the present case, in In re Kenrob, the debtor's trustee challenged as fraudulent transfers payments the Subchapter S debtor made, pursuant to a shareholder agreement, to cover the shareholders' taxes attributable to the pass-through liability. In addition to finding that the debtor's Subchapter S status resulted in a beneficial reduction in taxes, the court found that the debtor "also received the benefit of not distributing its income to the shareholders even though that income was passed through for tax purposes. The shareholders left the money in the corporation to be used for corporate purposes." Id. at 802. The court further held that:

> The consideration was the election by the shareholders of the corporation to be taxed as a chapter S corporation as long as the corporation paid their additional personal taxes. There was a continuing benefit to the corporation over the years and a continuing obligation on the part of the corporation to reimburse the shareholders.

Id. at 803. Thus, the court held that "the agreement between the shareholders and the corporation was valuable consideration to the corporation where the tax payments on behalf of the shareholders represented no more than the pass through tax liability. The

payments of the associated tax liability does not constitute a
constructively fraudulent transaction."   Id.

Appellee does not allege in the complaint that the 2006
Transfer exceeded Appellant's pass through tax liability. Further,
the Debtor's Director's Resolution which is attached as an exhibit
to the complaint, establishes that the 2006 Transfer was for only
that income tax attributable to Appellee's share of the Debtor's
taxable income, and thus, forecloses the possibility that the 2006
Transfer exceeded Appellee's pass through tax liability.[3]
Therefore, given the analogous circumstances as those in In re
Kenrob, the Court finds that the same result is warranted here and
determines that the 2006 Transfer was not a fraudulent transfer due
to the reasonably equivalent value the Debtor received as a result
of its Subchapter S corporate status.  Accordingly, the Bankruptcy
Court's ruling is affirmed on this basis.[4]

---

[3]     The Director's Resolution states, in pertinent part:
"Now, therefore, be it resolved, that the Board of Directors
authorizes and approves a Tax Distribution in the amount of Nine
Hundred Sixty-Nine Thousand, Eight Hundred Twenty Eight Dollars
($969,829) comprised of . . . a cash payment in the amount of
Ninety-Four Thousand, Four Hundred Twenty-Nine Dollars ($94,429) to
J. Richard Stephens for his share of the Tax Distribution . . ."

[4]     Given that the Court's analysis on a motion to dismiss is
limited to the allegations in the complaint and any attached
exhibits, the Court agrees with Appellee that the Bankruptcy Court
was not required to hold an evidentiary hearing prior to ruling on
the motions and that such hearing would be unnecessary where, as
here, the court can accurately "make the factual determination of
reasonable equivalence" (Doc. # 15 at 10), based only on the
allegations in the complaint and exhibits attached thereto.

Having affirmed the Bankruptcy Court's determination that the

Debtor received reasonably equivalent value for the 2006 Transfer

by virtue of its Subchapter S election, the Court need not analyze

the Bankruptcy Court's additional finding that the Debtor received

a reasonably equivalent value because the 2006 Transfer satisfied

an "antecedent debt" the Debtor owed pursuant to the Shareholders

Agreement.[5]

B.     **September 9, 2011 Order**

Pursuant to the Bankruptcy Court's February 9, 2011, Order,

Appellant was granted leave to file an amended complaint alleging

a cause of action for recovery of illegal dividends. (Doc. # 1-15).

Appellant filed an amended complaint on March 2, 2011, alleging one

count for avoidance, recovery and preservation of the 2006 Transfer

---

[5]     Appellee also argues that Appellant is barred by the
doctrine of issue preclusion from relitigating the issue of
reasonably equivalent value by the bankruptcy court's holding in a
separate adversary proceeding that Appellant filed against another
shareholder of the Debtor who also received a tax distribution in
2006. (Doc. # 13 at 14-16).  Appellee argues that the bankruptcy
court's dismissal of that case based upon a ruling that the Debtor
received reasonably equivalent value for the transfer to that
shareholder should preclude Appellant from relitigating that issue
here.  However, the Court finds that the issue in the current
proceeding is not identical to the issue in the prior proceeding,
which is required to establish issue preclusion. Specifically, the
issue of whether the transfer *to Appellee* provided reasonably
equivalent value to the Debtor was not at stake or actually
litigated in the other adversary proceeding.  Rather, the other
adversary proceeding considered only whether the transfer to that
shareholder was fraudulent or not.  Because the question of
reasonably equivalent value is highly fact specific, the Court
finds that the bankruptcy court's ruling on the issue regarding
transfers to another shareholder does not bar Appellant from
litigating the issue as to the transfer to Appellee.

based on the contention that the 2006 Transfer was an illegal dividend pursuant to O.C.G.A. § 14-2-640, which prohibits distributions to shareholders when a corporation is insolvent. (Doc. # 1-16).

On September 9, 2011, the Bankruptcy Court entered an order dismissing the amended complaint based upon its finding that Georgia law does not provide a cause of action against shareholders who receive an illegal dividend, but, rather, allows a party standing in the debtor's shoes to bring a cause of action only against the directors who assent to the distribution of an illegal dividend, who in turn may seek contribution from shareholders. (Doc. # 1-2).  Given the undisputed fact that Appellee was not a director of the Debtor, and at all relevant times was merely a shareholder, the Bankruptcy Court granted Appellee's motion to dismiss.

Appellant appeals the Bankruptcy Court's ruling on this issue. However, Appellant does not provide any statute or case law which would provide a basis for Appellant to bring a claim directly against a shareholder to recover illegal dividends.  Instead, Appellant confusingly intertwines the issue with its arguments regarding the fraudulent transfer issue, asserting that because the 2006 Transfer was an illegal dividend, the Debtor did not receive reasonably equivalent value for it such that it constitutes a voidable fraudulent transfer.  Not only does this argument fail to

provide a basis, statutory or otherwise, for Appellant to bring its illegal dividends claim directly against Appellee, the argument as it relates to Appellant's fraudulent transfer claim was not presented to or considered by the Bankruptcy Court, and thus, is not appropriate for consideration on appeal.

The Bankruptcy Court correctly concluded that Appellant's "remedy for an allegedly improper distribution is proscribed by the Georgia statutes. That is, to pursue the directors who voted or assented to the distribution in violation of O.C.G.A. § 14-2-640, who in turn may seek contribution from the sources specified in O.C.G.A. § 14-2-832(b). In this case, it appears that the two-year statute of limitation for an action by [Appellant] against the directors has expired." Accordingly, the Court affirms the Bankruptcy Court's dismissal of the amended complaint.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED** that:

(1)   The Bankruptcy Court's Order dated February 9, 2011, granting Appellee's Motion for Judgment on the Pleadings (Doc. # 1-15), is **AFFIRMED.**

(2)   The Bankruptcy Court's Order dated September 9, 2011, granting Appellee's Motion to Dismiss Amended Complaint (Doc. # 1-2), is **AFFIRMED.**

(3)   The Clerk is directed to transmit a copy of this Order to the Bankruptcy Court and, thereafter, **CLOSE THIS CASE.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>27th</u> day of September, 2012.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

Counsel of Record

The Honorable Caryl E. Delano,
United States Bankruptcy Judge